IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| HENRY CAYSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:05CV711-SRW |
| ) | (WO) |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Plaintiff Henry Cayson brings this action pursuant to 42 U.S.C. § 405(g) and § 1381(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On December 17, 2002, plaintiff filed an application for Supplemental Security Income. On February 23, 2004, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on May 22, 2004. The ALJ concluded that plaintiff suffered from the severe impairments of "bipolar disorder, antisocial personality disorder and history of substance dependence." (R. 25). He found that plaintiff's impairments, considered in combination, did not meet or equal the severity of any

of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform his past relevant work. Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. On June 9, 2005, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

### Consultative Examination

Plaintiff argues that the ALJ erred by failing to order a consultative examination by a psychiatrist or psychologist. The ALJ is charged with developing a fair and full record. Todd v. Heckler, 736 F.2d 641, 642 (11th Cir.1984). However, the burden is on the plaintiff to prove he is disabled. The Social Security regulations provide in part:

> In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means you must furnish medical and other evidence that we can use to reach conclusions about your impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis.
>
> 20 C.F.R. § 404.1512(a).

Consultative examinations are not required by statute, but the Commissioner's regulations provide for them where warranted. See 20 C.F.R. § 404.1517. Those regulations state:

> (a)(1) *General.* The decision to purchase a consultative examination for you will be made after we have given full consideration to whether the additional information needed (e.g., clinical findings, laboratory tests, diagnoses, and prognosis) is readily available from the records of your medical sources.
>
> (b) *Situations requiring a consultative examination.* A consultative examination may be purchased when the evidence as a whole, both medical and non-medical, is not sufficient to support a decision on your claim.

20 C.F.R. § 404.1519(a).

While it is reversible error for an ALJ not to order a consultative examination when the evaluation is necessary for him or her to make an informed decision, Reeves v. Heckler, 734 F.2d 519, 522 n. 1 (11th Cir.1984), the ALJ is not required to order a consultative examination unless the record, medical and non-medical, establishes that such an

examination is necessary to enable the ALJ to render a decision. Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir.1988) (citing Ford v. Secretary of Health and Human Services, 659 F.2d 66, 69 (5th Cir.1981)) (emphasis added).

The records before the ALJ included documents from Jackson Hospital reflecting plaintiff's admission through the emergency room on March 21, 2002. At that time, plaintiff reported that he "could not rest, could not sleep, increasingly feeling religious, preaching x 1-2 months, only sleep 2-3 hours per night." (R. 113). Dr. Fred Brown admitted plaintiff for stabilization. (Id.). Plaintiff's urine tested positive for THC. Dr. Brown determined that plaintiff was bipolar and manic and treated him with medication. He discharged the plaintiff on March 27, 2002 with an Axis I diagnosis of "Bipolar disorder, manic, severe, with psychotic features," and a GAF of "50, highest in past year 60." (R. 111). The following week, plaintiff reported to Montgomery Area Mental Health Authority ("MAMHA") for "aftercare services." (R. 147). MAHMA physicians and therapists thereafter treated plaintiff with medication therapy and periodic counseling. (Exhibits 3-F, 6-F). In October 2002, plaintiff stopped taking his medication. According to his wife, he then became manic and delusional, and began having auditory hallucinations and religious delusions. On November 20, 2002, he was admitted to Jackson Hospital by Dr. Margaret Sellers-Bok. (R. 119-22). He was then in a "psychotic manic state" and "had been using cocaine." (R. 122). He improved with medication, and was discharged on November 26, 2002 with referrals to MAMHA and the Lighthouse for follow-up treatment. Dr. Sellers-Bok noted, "The patient has a severe problem with cocaine abuse and until he becomes sober he will not be able to benefit from psychiatric medications much, because of his severe cocaine use off and on."

(Id.).[1]

Plaintiff reported to MAMHA for treatment on December 4, 2002. (R. 136). On December 11, 2002, he was reported to be "doing well" on medication. (R. 135). Records for a follow-up visit in July 2003 reflect that plaintiff was then "coping fine." (R. 205). Treatment notes for September 2003 state that "Client appears stable and denies any problems today." (R. 202). In December 2003, plaintiff "appear[ed] stable," but reported that he was depressed and also that he had been out of his medications for one month. (R. 201).

Plaintiff's alleged onset date is November 30, 2002. (R. 20; 208-09). As noted above, the record before the ALJ included mental health treatment records from plaintiff's admissions for inpatient treatment at Jackson Hospital in March 2002 and in November 2002. (Exhibits 1-F, 2-F). Additionally, the ALJ considered treatment records from MAMHA covering plaintiff's course of treatment at that facility between April 2002 and December 2003. (Exhibits 3-F, 6-F). A consultative mental examination was not necessary to permit the ALJ to make an informed decision and, thus, the ALJ did not err by failing to order such an examination.[2,3]

---

[1] At the hearing, plaintiff testified that he has not used alcohol or any illegal substance since his last hospital admission in late 2002. He stated that he has been enrolled in a treatment program at the Lighthouse since then and that he has had no positive drug tests. (R. 214-15).

[2] At the hearing, plaintiff's counsel requested – and the ALJ allowed – a period of 21 days after the hearing to obtain and submit a functional assessment from plaintiff's treating physician at MAMHA. (R. 226-27). However, it appears that no such assessment was provided to the ALJ.

[3] Plaintiff argues that the ALJ "erroneously stated in his decision that Plaintiff had only once suffered from an episode of decompensation. With two extended hospitalizations in 2002 for treatment of exacerbated bipolar disorder, the finding of the ALJ is clearly erroneous." (Doc. # 11, p. 6). The ALJ did not make a finding that plaintiff had suffered only one episode; to the contrary, he discusses both

**Side Effects of Medication**

Plaintiff also argues that the ALJ did not properly consider his complaints of significant side effects. He argues that the ALJ erred by failing to "make any effort to either contact Plaintiff's treating physician or order a consultative evaluation for evidence concerning the possibility of medication side effects that would render Plaintiff incapable of work on a regular basis" and in failing to include such side effects in his hypothetical questions to the vocational expert. (Doc. # 11, p. 7). At the hearing, the ALJ questioned plaintiff about whether his current medication caused any side effects. Plaintiff responded that it made him gain weight, and that it made him tired and sluggish for the whole day. (R. 218-19).[4] The ALJ considered plaintiff's testimony. (R. 21). However, he determined that plaintiff had no physical limitations, and noted that no physician had stated that plaintiff was unable to perform work activity. (R. 24). The medical evidence reveals that plaintiff complained of side effects of his medication only once during the relevant period[5] when, on December 4, 2002, he reported to his physician that the Haldol made him feel like a "zombie." (R. 136). In response, the physician decreased the dosage of this medication.

---

hospitalizations (R. 21-22) and notes that "the claimant had two episodes for which psychiatric treatment was required." (R. 24). The ALJ *did* incorrectly summarize Dr. Roque's PRTF form. Dr. Roque checked the block indicating that plaintiff had experienced "One or Two" episodes of decompensation of extended duration (R. 191), but the ALJ's decision states that Roque's PRTF indicates "one episode of decompensation of an extended duration." (R. 22). However, it is apparent that this was merely a transcription error and that the ALJ made no "finding" that there had been only one episode of decompensation. To the extent this is error, it is harmless.

[4] Counsel argues that plaintiff's mother also testified to plaintiff's "substantial side effects from his strong anti-psychotic medications" (Doc. # 11, p. 7). However, the hearing transcript includes no such testimony from plaintiff's mother. (See R. 220-22).

[5] In June 2002, five months before plaintiff's alleged onset date, his physician reduced plaintiff's morning dosage of Seroquel in response to plaintiff's complaint of "low energy." (R. 133, 145).

(Id.).  In a follow-up visit on December 11, 2002, the doctor expressly indicated no problem with side effects, and continued plaintiff on the same medications.  (R. 135).   Treatment notes for subsequent visits to plaintiff's treating physician at MAMHA also expressly note no reported problems with side effects.  (R. 201-205).  The ALJ's conclusion that plaintiff suffers from no physical limitations that would preclude work activity, thus, is supported by substantial evidence.  See Turner v. Commissioner of Social Security, 2006 WL 1490144, *2 (11th Cir. May 31, 2006)(ALJ did not err in failing to credit claimant's testimony of side effects from medications where the record included no evidence that she consistently complained to her physicians of side effects); see also Lipscomb v. Commissioner of Social Security, 2006 WL 2952736 (11th Cir. Oct. 17, 2006).

## CONCLUSION

Upon its review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.  A separate judgment will be entered.

DONE, this 26th day of January, 2007.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE